I represent the appellant, Mr. Licea-Barajas. With the Court's permission, I would like to reserve two minutes of my time for rebuttal, and I will try to keep track of my own time. The issue before the Court is how to interpret subsection A-5 of Section 1432 of Title VIII. It's not the issue for the Court. I find the whole set of events here interesting. For some reason, that's not entirely understandable. The interpretation issue went to the jury as a fact. Yes. Right. And there's a very significant, it seems to me, question of prosecutorial misconduct or misrepresentation with respect to that event. If we thought that the jury was misled about what it was asked to decide, whether it should have been asked to decide it or not, does the interpretation of the statute matter, what we would say about it? I think it does, Your Honor, because both sides offer two very clearly different interpretations of that statute. And they offered it to the jury, and the jury chose and was for some reason asked to choose. Right. Okay. But while it was presented to the jury as a question of fact, and I do believe there is a component of that which is a question of fact, are you residing here permanently after your parent is naturalized, I think the Court is correct that it probably would have benefited from some instructions from the Court discussing the kind of legal issues that are now coming up. Let's put it another way. Suppose we disagreed with you about your statutory interpretation. Yes. Nonetheless, the thing went to the jury, and do we still review the way in which it went to the jury and say, they were misled, they might have found otherwise if they weren't, and reverse anyway? Or do we or if we find against you on the law, do you lose? I think it depends on what interpretation the Court ultimately comes up with. If the Court adopts the interpretation that's been advocated by the government, the very strict, restrictive reading of that provision, I think the evidence that was presented, the undisputed evidence of Mr. Lysia being in this country from the time he was 8 years old continuously through the time his mother was naturalized, arguably he could never make, satisfy that element. So in other words, it would be harmless, the argument to the contrary. Correct. Then again, there is the possibility that the Court could adopt some interpretation of that section that is something perhaps in between what we have both proffered. And in that case, it may be that the Court does reach the issue of the prosecutorial misconduct because there was a legitimate issue on that point on subsection 85 to be presented to the jury and the government's improper misconduct. So in other words, just to get the decision tree straight, your position is that if the government's position on the statute is correct, you lose? Yes. Okay. If we don't adopt the government's position and we either adopt your position or potentially some in-between position, then we would need to evaluate the prosecutorial misconduct claim and see whether or not it was harmless. And I take it your position is it wouldn't be harmless. No, I would disagree with you, Your Honor. If the Court adopts the interpretation of subsection 85 that we've put forth, then I believe that it is undisputed that Mr. Lysia, the evidence in front of the jury, showed that he fell under that provision. He would fall under it, okay. And that means that he would have become a citizen in 1996 if either his father was alive or his father had been naturalized, two facts that were not addressed by the government at all, which led to constitutionally insufficient evidence. So I think if the Court adopts the interpretation of the provision that we are asking for, I think it must. Then you win. Just on that point. Yeah. I think it must end with a. All right. What that means is that either way, sending it to the jury was a useless act. Either way, if the Court, again, adopts one or the other of the interpretations that we've put forth, as I said, I can conceive of. Because, in effect, you have these nondisputed facts, and the question is how, which interpretation of the statute do they fit in? Right. And I think by reading through the arguments to the jury, it reads awkwardly because it does seem like the counsel's arguing to the jury is something they should be arguing to a judge. But I agree. This is what troubles me. If the jury hadn't been told what they were told by the government with regard to what the I.J. did, let's suppose, and had come back and acquitted your client on the theory that was given to it, which is it was up to them to decide what the statute meant, you'd be home free, right? Even if we were to later decide that that statute didn't mean that at all. Correct. So it's a very bizarre situation. But go on with your statutory arguments.  Thank you, Your Honor. Basically, the question before the Court is whether Mr. Lysia, who undisputedly resided in this country continuously from the time he was 7 or 8 and resided here permanently after his mother was naturalized, whether he is nevertheless excluded from the coverage of subsection A-5 simply because he lived here for 8 years before that fact as well. The government says the answer to that question is yes. But its interpretation conflicts with common sense. The second clause of subsection A-5 doesn't contain a lawful admission requirement. Okay. Let's just go to the first clause just because they're related in some sense. So basically, if he was here under a lawful permanent residence order, which requires lawful residence, then he'd be home free, but he wasn't. Correct? Correct. So we don't apply that. So then you go to the or thereafter begins to reside permanently. Correct? Correct. And in that particular little phrase, it doesn't say reside lawfully or lawfully reside permanently. Correct? Correct. So it seems to me then that it would turn on what thereafter means. Or do you think it turns on something else? I agree that the focus of this Court's attention should be on the words. Thereafter begins, I think, is the clear, but those two words working in concert in that phrase are the key concept that we're having trouble getting around. The government takes a very restrictive reading and says that, well, you cannot begin to reside permanently in this country after your parent has naturalized, if you've already been residing there permanently already. I think that's too harsh of an interpretation. I think that just because somebody's been doing something for a while, it does not mean that they can't begin again to do the same thing after some intervening event occurs, which causes the clock to restart, if you will. What's the event here? Here it's Mrs. Lysia Barajas' naturalization. Once Mr. Lysia satisfied or started living in this country permanently, after his mother was naturalized, he began to fulfill, he fulfilled the requirements set forth in subsection A-5, the second clause. Assuming the other. So in other words, though, why would you even need clause one? Because you wouldn't even, let's just take a child. You wouldn't need to be here lawfully under clause, we'll call it part B of the clause. You wouldn't need to be here lawfully. So why would you even need part A of the section about being here lawfully if all you needed to do was be here after the naturalization? I think the reason for the differences in the two clauses is this. Congress recognized that a child who had already obtained legal permanent resident status has basically already proved, established the intent to stay here permanently, and therefore no more is required once the other requirements of section 1432 are met for him to automatically, for him or she to automatically become a citizen. But it also recognizes there's another class of people out there who may not have become, gotten an official stamp from the INS to become lawful permanent residents, who nevertheless are residing here permanently by their very actions. That's true. Before, and it's a very strange way to write a statute, especially if you were trying to mean what you were saying. And it seems, I mean, isn't the better guess that begins to reside permanently was just shorthand for a reference to what had gone previously, i.e., lawful admissions for permanent residents or later lawful permanent residents. It was just kind of shorthand on the theory that nobody really resides here permanently if they're unlawful anyway, because we can always throw them out. I agree, Your Honor. Right. I believe that the only rational way to look at the statute is when Congress chose the words, thereafter begins, it's focusing on the post-naturalization permanent residents in the country, because that's what it cares about. And it may have been, could have showed better language. But everybody, if you're here when your parent gets naturalized. Your Honor. Simultaneously. Whether you're here legally, you wouldn't need Part A, because you would thereafter begin to reside permanently the second after they became naturalized. Correct? And you'd also. Go ahead and answer, please. I haven't thought about whether there's a circumstance, I mean, whether there's a circumstance where potentially a lawful, somebody who's lawfully admitted for permanent residence might not necessarily begin to instantly reside permanently. It says at the time the naturalization. Okay. So here's this little point in time. And there's the before, and then there's the second, and the time afterwards. And you could just do away with Part A. You could just say any time your parent gets naturalized and thereafter you begin to reside permanently or you're okay. If you're under 18. If you're under 18. Right. Again, at the risk of repeating myself. I think that the reason for that is not because the people who are covered by the first clause might not also be covered by the second clause. But they're recognizing two different ways of proving. But you would actually, to do your interpretation, I think we'd have to say thereafter continues to reside. That's really what you would ask us to mean. Begins means continues. Continues in this case. I just think, I think that what the key concept in the statute is, is that the child reside permanently in the United States after the mother is naturalized. Whether that's a new continuation or a continuing from earlier, the key concept is that. But that time sequence becomes pretty bizarre also, because as soon as they begin to reside permanently, they become a citizen automatically. Right. So what's the time? Is that all happened the same day? Let's just say the mother becomes naturalized. Right. The person's been here all along. You're essentially saying the mother becoming naturalized makes the, transforms the child from a temporary resident to a permanent resident. So they're now beginning to reside permanently. And the minute that happens, they become a citizen automatically. Yes. Any time between. So what is the point of the, begins to reside permanently? What you're really saying is if the child is living there, has lived there while they were illegal, as soon as the mother becomes a citizen, the child becomes a citizen, doesn't become a permanent resident. Correct. And I think that, I think that one thing that should not be lost sight of is, and I know that it's kind of come up in a couple of the other cases that have been talked about this morning, is we can't ignore that part of the policy behind the statute is wanting to keep parents and children together. And I think that any language that we are focusing on has to be viewed in the context of that general policy. And to read the statute as the government would like, which is to say we have a family here who's been living here together continuously for eight years. The mother becomes naturalized. Ordinarily, if the son came in at that time, he could become naturalized and also become a citizen. But we're not going to do that. We're going to separate out the family. We're going to make them send them back to Mexico. I think you're well extended beyond your time and we have your argument in hand. Thank you. We'll hear from the government. Good morning. Douglas Miller, appearing on behalf of the United States. May it please the Court. I believe the issue that the Court has focused in on clearly is one that drives what will happen in this case, and that is what the terms of this statute were intended to mean. The government has Let me do as I did with your opponent. It's not clear to me why that's the case. And perhaps this case should have been tried on the theory that this was all a legal question for the Court, but it wasn't. It was tried on the basis that the jury was supposed to decide how the statute applied to this person, including legal determinations, apparently. Is that true? Well, Your Honor, the government did not take that position initially. We argued to include. I understand that. That's the way it went to the jury. Ultimately, yes. And it was argued at great length to the jury. Yes, Your Honor. And the government made a complete misrepresentation to the jury in terms of what it should rely on. At some length, they were told that the I.J. had found that this person was not a citizen and that they should rely on what the I.J. said. And they were told that despite the fact that it was plain from the transcript that the I.J. did not have the relevant facts, i.e., he didn't know when the mother had become a citizen after this child was over 18. So it was totally irrelevant and it was misrepresented to the jury. So assuming that, do you agree with that, that there was an error? I think it was irrelevant because of the way the statute was written, and that goes to my harmlessness argument. Well, that's what I'm trying to understand. Why is it harmless? If in fact that had not happened and the jury had done what it was asked to do and had decided that this statute did not apply to this person, rightly or wrongly, he would have been acquitted and we'd all be gone, go home. And the fact that there was a different error made, which may well be that some illegal question was sent to the jury as a fact when it should have been decided as a legal question, I don't see what's why we then turn around and say, well, it's harmless because they shouldn't have been deciding it at all, which is really what you're saying. I agree with the Court that the relevance, the Court is in a difficult position because it comes down on either side. It seems that this either way should not have gone to the jury. All I can say is the argument that the jury and the jury's decision, if it had been the opposite, would have been determinative and it may well have been the opposite if there weren't misrepresentations made to it. And that's what really bothers me. Your Honor, with respect to their misrepresentations, what I sought to argue in rebuttal was not intended to misrepresent what was presented to the IJ at the immigration proceeding. I agree that it was unartful and there was some ambiguity in what the government or what I presented. As this Court is aware, considering the entire context of this trial is how we should look to this misconduct allegation. And what had happened during closing argument by the defendant was that, I think while acknowledging that he would have the burden, or pardon me, that he met the criteria for derivative citizenship, that if this was presented to an immigration judge, he himself would have the burden of presenting it. That's important because when I came back in rebuttal argument, what I asked the jury to consider was, as the defendant pointed out, referring at that moment when I made that statement to ER-185I, as the defendant pointed out, he would have the burden at his immigration proceeding. You would think the judge would have looked into this. What the government was arguing was that if the defendant had presented this when he had the burden, the judge would have looked into it. I agree that the conditional clause, if the defendant had presented that, is not in the record. But I would like to make clear for this Court that that was an inartful presentation but not something. The jury was, as I understand it, told that the – that they essentially should rely on what the I.J. found, because the I.J. wouldn't have found it if it were wrong. I mean, that was the overall message the jury got. I would argue that that was not the overall message in the context of the entire trial. And I rely, again, as I cited in my papers, in Marin Cuevas, where the jury had been repeatedly instructed that the difference between immigration proceedings and this criminal proceeding were substantial, that is, clear and convincing evidence versus proof beyond a reasonable doubt. Then when this challenge statement was made, I attempted to make clear to the jury that that standard that the judge decided this issue under was not the same as the standard and that ours was much higher. And then beyond that, what this Court held in Marin Cuevas, well, didn't hold but at least made reference to, was that in these circumstances where the whole ball of wax is derivative citizenship, that is, that's what they've been called to decide, the jury, statements such as these would have made the entire proceeding superfluous if the jury simply thought, well, despite all of the arguments for the last two days, I can simply rely on the IJ order. And I think to answer Your Honor's question, in the context of the trial, that is, the instructions, repeated instructions about the varying standards of proof and the idea that the entire trial was devoted to whether or not the defendant met the criteria for derivative citizenship, it is not likely that the jury walked away, despite the government's inartful argument, with the impression that it could simply rely on what the IJ had previously decided. Of course, I don't. One of the difficulties is since we're having a little trouble figuring this out, I'm not sure how the jury could figure it out. So let's say we disagreed with you and we said, you know, this was, it wasn't harmless. Then it seems to me two things could happen. We could say it's not harmless and send it back, and then you'd kind of be back where you started. Or we could say it's not harmless and here's the interpretation of the statute. Okay. So let me ask you this. If we said it's not harmless, what happened here, and we don't know how this should have turned out, and that's all we say, and we send it back, then do we go through the same trial again with the same ambiguous statute as part of the instructions? I think the judge, there has been some subsequent guidance, and this gets to the 20HA letter that we submitted. Correct. That at least under the facts of this case where the defendant was brought here at the early age of 8, remained here throughout his mother's naturalization and beyond, that in those circumstances, regardless of what we read into thereafter or begins, assuming that that is not a distinction that needs to be drawn, at least by the Second Circuit's opinion, that those facts are not enough to satisfy the elements of 1432. So you would have, well, the judge would, the district judge would make that determination. Would have to make that determination. I guess the alternative is, again, if we were to disagree with you and say, well, we don't really think this is harmless, and here's the interpretation of a statute, then what would happen? In the event that this, it's my understanding, if the court were to make the interpretation that the statute is as the government is requesting, that the defendant would lose because he would not have met the criteria. It would almost make the government's argument irrelevant. Would he lose or would he be subject to a new trial with the correct standard? Pardon me? I missed that. Would he lose or would he be subject to a new trial applying the correct standard? I would think he would lose statutorily. Why would he lose? Well, when you say he would lose statutorily, it doesn't really work that way in criminal law. You know, I mean, in the sense of he had the trial and he did lose one trial. But now we say, just hypothetically, let's say we were to say we reverse the conviction and we're not going to put ourselves in the shoes of the jury to see on fact-finding because it's not a summary judgment motion. So it's a criminal trial. We would remand it, but with the interpretation. So then my question is, what would happen? Would he then, basically the government would decide whether to prosecute again and he would have a trial or anything that might happen between the prosecution and the trial? That's correct. And I guess I think he would be retried. I think there the issue would be whether or not the jury would be entitled to have this instruction on derivative citizenship. And if the court were to make the determination that the defendant was ineligible, it would be the government's position that the trial should go forward without this derivative citizenship instruction. What's his, is he incarcerated now? He's currently incarcerated, serving a 77-month sentence. Subject to this conviction. That's correct. Okay. I think we've covered essentially all the issues I intended to cover, so unless the Court has further questions. I don't think so. Thank you. I think we have everybody's argument in hand. The case just argued is submitted.
judges: McKeown, Berzon, King